UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TROY McWILLIAMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EVOQUA WATER TECHNOLOGIES CORP., RONALD C. KEATING, and BENEDICT J. STAS,<br><br>Defendants | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, individually and on behalf of all the other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Evoqua Water Technologies Corp. ("Evoqua" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Evoqua securities on the open market between November 6, 2017 and October 30, 2018, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of the Securities Exchange Act of 1934 (the "Exchange Act") (the "Class").

2.      Evoqua purports to be a leading provider of mission critical water treatment solutions, offering services, systems and technologies to support our customers' full water lifecycle needs.  With over 200,000 installations worldwide, the Company holds leading positions in the industrial, commercial and municipal water treatment markets in North America.  Evoqua offers a portfolio of differentiated, proprietary technology solutions sold under a number of brands.  Evoqua claims that the customer intimacy created through its service network is a significant competitive advantage.

3.      Evoqua was incorporated in 2013 and is headquartered in Pittsburgh, Pennsylvania. Evoqua's common stock trades on the New York Stock Exchange (the "NYSE") under the ticker symbol "AQUA."

4.      Throughout Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Evoqua failed to successfully integrate its prior acquisitions; (ii) Evoqua was experiencing supply chain disruptions influenced by tariffs and an extended delay on a large aquatics project; and (iii) as a result of the foregoing, Evoqua's public statements were materially false and misleading at all relevant times.

5.      On October 30, 2018, Evoqua announced its preliminary financial results for the fourth quarter and fiscal year ended September 30, 2018, which fell below the Company's and analyst's expectations.  Evoqua stated that the shortfalls were "primarily due to acquisition system integration issues, supply chain disruptions influenced by tariffs and an extended delay on a large aquatics project."

6.      On this news, Evoqua's stock price fell $4.78 per share, or 34.64%, to close at $9.02 on October 30, 2018.

7.      As a result of Defendants' false and/or misleading statements, Evoqua securities traded at inflated prices.  However, after disclosure of Defendants' false and/or misleading statements, Evoqua's

stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Evoqua's securities trade on the NYSE, located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff purchased or otherwise acquired Evoqua common stock as described in the attached certification and was damaged by the revelation of the alleged corrective disclosure.

13.     Defendant Evoqua is incorporated in Delaware, and its stock trades on the NYSE under the ticker symbol "AQUA."  The Company's corporate headquarters are located at 210 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

14.     Defendant Ronald C. Keating ("Keating") has served at all relevant times as Chief Executive Officer of Evoqua.

15.     Defendant Benedict J. Stas ("Stas") has served at all relevant times as Chief Financial Officer of Evoqua.

16.     The Defendants named in ¶¶ 14-15 are sometimes referred to herein collectively as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Evoqua purports to be a leading provider of mission critical water treatment solutions, offering services, systems and technologies to support our customers' full water lifecycle needs. With over 200,000 installations worldwide, the Company holds leading positions in the industrial, commercial and municipal water treatment markets in North America. Evoqua offers a portfolio of differentiated, proprietary technology solutions sold under a number of brands. Evoqua claims that the customer intimacy created through its service network is a significant competitive advantage.

19.     On October 10, 2017, Evoqua filed a registration statement on Form S-1 with the SEC in connection with the Company's initial public offering on or about November 6, 2017 (the "IPO" or the "Offering").  The registration statement was subsequently amended several times, with the final amended

4

registration statement in connection with the IPO filed on Form S-1/A with the SEC on October 20, 2017 (collectively, the "IPO Registration Statement").

20.     The Registration Statement contained a preliminary prospectus.  The final prospectus (the "IPO Prospectus") was filed with the SEC on November 3, 2018.

21.     On November 1, 2018, the SEC declared the IPO Registration Statement effective.

22.     On November 6, 2017, Evoqua completed its IPO of 27,777,777 shares of common stock at a price of $18.00 per share.

**The Alleged False and Misleading Statements**

23.     The Class Period begins on November 6, 2018, the date of the completion of Evoqua's IPO.  In the IPO Prospectus, which forms part of its IPO Registration Statement, the Company touted its "[e]xperienced management team with proven operational capabilities" as one of its strengths, stating in relevant part:[1]

> ***Experienced management team with proven operational capabilities that has made Evoqua an employer of choice.***   We are highly dependent on our leadership team, which consists of industry veterans with a track record of executing effective strategies and achieving profitable growth. Ron Keating, our CEO, is a highly experienced executive with a strategic, commercial and operational background developed in senior roles, where he reshaped organizations and corporate portfolios for growth. Ben Stas, our CFO, has held a variety of senior financial and business roles in the capital goods sector. Our leadership developed and deployed standard operating processes under the Evoqua Growth System that repositioned the business and improved margins through operational programs and standards such as LEAN operating systems, service growth and ePro, among others. These programs, combined with our newly implemented sales methodology, Evoqua EDGE, have improved our free cash flow profile and growth prospects*.* ***Our management team has also expanded our operations to new target markets and geographies and has demonstrated successful acquisition and integration capabilities***. Our success depends to a significant extent on our ability to retain or attract employees in senior management, skilled technical, engineering, sales and other key personnel.

---

[1] Emphasis added throughout unless stated otherwise.

After the AEA Acquisition, we began a transformation of our business into a global organization with an independent, professional management team. We believe our transformation has made us into a premier partner and employer in our industry, resulting in differentiated capabilities and talent within our organization. We have instilled an entrepreneurial environment where employees believe in the mission and leverage the collective intellect and expertise of service technicians and engineers. To develop a safety focused culture, we have invested heavily in our environmental, health and safety ("EH&S") program, which is committed to providing employees with a safe and healthy workplace while protecting our shared environment.

24.     The IPO Prospectus also touted the Company's operations as a strength, stating in relevant

part:

*Well invested manufacturing and service footprint provides operating leverage and supports our growth.*   We believe our manufacturing, service and sales functions are capable of supporting our long-term growth targets. Our manufacturing base is currently operating at approximately 40% of its maximum capacity levels at June 30, 2017, creating an opportunity for volume and margin expansion without significant new capital investments. This dynamic also enhances our ability to absorb new acquisitions into our existing operations, though we may not be able to successfully identify, integrate or compete for acquisition targets. *We have also identified and are pursuing several operational improvement campaigns including ePro and LEAN, our supply chain excellence initiative that centralizes and standardizes purchasing across the organization. These initiatives, combined with low levels of maintenance capital expenditures and efficient working capital management, create flexibility to deploy cash flow for accretive investments.*

25.     The Company has three reportable segments: (i) Industrial Segment, (ii) Municipal

Segment; and (iii) Products Segment. The IPO Prospectus states in relevant part:

The key factors used to identify these reportable segments are the organization and alignment of our internal operations, the nature of the products and services and customer type.

• Within the Industrial Segment, we primarily provide tailored solutions in collaboration with our customers backed by life-cycle services including on-demand water, BOO, recycle and reuse and emergency response service alternatives to improve operational reliability, performance and environmental compliance.

• Within the Municipal Segment, we primarily deliver solutions, equipment and services to engineering firms, OEMs and municipalities to treat wastewater and purify drinking water.

• Within the Products Segment, we provide a highly differentiated and scalable range of products and technologies specified by global water treatment designers, OEMs, engineering firms and integrators.

26.     Since 2016, the Company has completed at least eight acquisitions. The IPO Prospectus provides that these "tuck-in acquisitions present a key opportunity within [the Company's] overall growth strategy," further stating in relevant part:

> ***We believe that tuck-in acquisitions present a key opportunity within our overall growth strategy, which we will continue to evaluate strategically***. These strategic acquisitions will enable us to accelerate our growth in our current addressable market, as well as in new geographies and new end market verticals. Our existing customer relationships, best-in-class channels to market and ability to rapidly commercialize technologies provide a strong platform to drive rapid growth in the businesses we acquire***. To capitalize on these opportunities, we have built an experienced team dedicated to mergers and acquisitions that has successfully completed eight technology-enhancing and geography-expanding acquisitions since April 2016, with purchase prices ranging from approximately $3.3 million to approximately $283.7 million, and pre-acquisition revenues ranging from approximately $3.1 million to approximately $55.7 million***. We will continue to actively evaluate acquisition opportunities that are consistent with our business strategy and financial model, and, although we may not be able to continue to identify suitable acquisition targets and implement our growth strategy, we currently have a pipeline which includes more than 60 potential targets, which has been developed proactively by our team as well as informed by our customer base. Our acquisitions include:
>
> **Magneto**—On April 11, 2016, we completed the acquisition of 100% of the issued and outstanding capital stock of privately held Magneto, a leader in the development and manufacture of anodes for the electrochemical industry and refurbishment of electrochlorination cells for seawater electrolysis for €23.4 million (or approximately $26.5 million). Magneto is included in the results of our Products Segment.
>
> **Neptune-Benson**—On April 15, 2016, we completed the acquisition of 100% of the issued and outstanding capital stock of privately held Neptune-Benson, a leading manufacturer of high-quality water filtration and disinfection products for the commercial, industrial and municipal water markets for $283.7 million. Neptune-Benson is included in the results of our Products Segment.

**VAF**—On July 1, 2016, we completed the acquisition of substantially all of the assets of VAF for approximately $3.3 million, consisting of $2.7 million cash at closing and $0.6 million related to a $1.0 million maximum earnout payment subject to various performance metrics over the next five years. VAF is a leading screen filtration manufacturer based in Arvada, Colorado. VAF is included in the results of our Products Segment.

**Delta UV—**On August 3, 2016, we completed the acquisition of 100% of the issued and outstanding capital stock of Delta UV, a leading manufacturer and marketer of UV-C technology in North America for $4.8 million. Delta UV is included in the results of our Products Segment.

**ETS**—On November 1, 2016, we completed the acquisition of substantially all of the assets of ETS, which adds organic wastewater treatment capability to our industrial treatment solutions, for $10.7 million. ETS further allows us to insource manufacturing of dissolved air flotation units, the production of which we previously outsourced. ETS is included in the results of our Industrial Segment.

**Noble**—On May 9, 2017, we completed the acquisition of substantially all of the assets of Noble, which provides water equipment and treatment systems for commercial buildings, industrial plants, medical laboratories and the pharmaceutical industry, with a focus on the Texas market, for $7.6 million, consisting of $5.9 million cash paid at closing and $1.7 million related to a $2.4 million maximum earnout payment subject to various performance metrics measured at the end of the 12 month period following closing. Noble supports our existing high-purity water capabilities and is based in Dallas, Texas. Noble will be included in the results of our Industrial Segment going forward.

**ADI**—On June 30, 2017, we completed the acquisition of ADI, a leader in anaerobic digestion, aerobic treatment and biogas treatment, green energy recovery and water reuse technologies, as well as industrial wastewater cover liners and containment systems for a base purchase price of CAD 71.4 million (or approximately $54.9 million), of which CAD 67.3 million ($51.8 million) in cash was paid at closing and included the fair value of the earnout payments of CAD 4.1 million ($3.1 million). The maximum earnout payment of CAD 7.5 million (or approximately $5.7 million), is payable over a period of twenty-four months based upon the achievement of certain specified performance metrics. ADI will be included in the results of our Industrial Segment going forward.

**Olson**—On June 30, 2017, we completed the acquisition of all of the issued and outstanding shares of capital stock of privately held Olson, a leading designer and producer of filters and irrigation components for the agriculture and industrial markets, for $9.4 million. Olson will be included in the results of our Products Segment going forward.

27.     The IPO Registration Statement was signed by the Individual Defendants.

8

28.     On December 4, 2017, the Company filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and year ended September 30, 2017 (the "2017 10-K"). The 2017 10-K touted the Company's purported "***accretive tuck-in acquisitions***" as a key component of its "Growth [S]trategy" and include the same statements identified in ¶ 26 above.

29.     The 2017 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the filing "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

30.     On March 12, 2018, Evoqua filed a registration statement on Form S-1 with the SEC in connection with a secondary offering of common stock (the "Secondary Registration Statement"), which contained a preliminary prospectus (the "Secondary Prospectus").  In the Secondary Prospectus, the Company touted its "[e]xperienced management team with proven operational capabilities" as one of its strengths, and includes the same statements identified in ¶ 23 above.

31.     The Secondary Prospectus also touted the Company's operations as a strength, and includes the same statements identified in ¶ 24 above.

32.     The Secondary Prospectus touted the Company's purported "***accretive tuck-in acquisitions***" as a key component of its Growth [S]trategy", stating in relevant part:

> As a complement to our organic growth initiatives, we view tuck-in acquisitions as a key element of our overall growth strategy which will enable us to accelerate our growth in our current addressable market, new geographies and new end market verticals. Our existing customer relationships, channels to market and ability to rapidly commercialize technologies provide a strong platform to drive growth in the businesses we acquire. ***To capitalize on these opportunities we have built an experienced team dedicated to mergers and acquisitions that has successfully completed ten technology-enhancing and geography-expanding acquisitions since April 2016, including the addition of capabilities in the attractive aquatics***

*market*, which we have typically financed through borrowings under our revolving credit facility and cash on hand. Although we may not continue to identify suitable acquisition targets and implement our growth strategy, we currently have a pipeline which includes more than 60 potential targets, which has been developed proactively by our team as well as informed by our customer base.

33.    The Secondary Registration Statement was signed by the Individual Defendants.

34.    The statements referenced in ¶¶ 23-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Evoqua failed to successfully integrate its prior acquisitions; (ii) Evoqua was experiencing supply chain disruptions influenced by tariffs and an extended delay on a large aquatics project; and (iii) as a result of the foregoing, Evoqua's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

35.    On October 30, 2018, Evoqua announced disappointing preliminary financial results for the fourth quarter and fiscal year ended September 30, 2018.  The results were below the Company's and analyst's expectations.  Specifically, Evoqua lowered its financial forecast for full-year 2018, and warned investors that it now expected full-year 2018 revenues to be between $1.33 billion to $1.34 billion, an increase of approximately 7% to 7.4% over 2017 versus a prior expectation range of $1.34 billion to $1.37 billion, which would have represented an increase of 7% to 10% over the previous year. The Company also expects full-year 2018 adjusted earnings before interest, taxes, depreciation and amortization ("Adjusted EBITDA") to be in the range of $213 million to $217 million, an increase of 2.6% to 4.5% over the previous year. The prior Adjusted EBITDA expectation range was $235 million to $245 million, which would have represented an increase of 13% to 18% over 2017

36.    Evoqua said the shortfalls are "primarily due to acquisition system integration issues, supply chain disruptions influenced by tariffs and an extended delay on a large aquatics project." Specifically, in the press release announcing the financial results states in relevant part:

> Ron Keating, Evoqua's Chief Executive Officer, stated, "As we evaluate our preliminary results, we are disappointed with our full-year performance. ***Our challenges were primarily concentrated in the Product segment's aquatics business and the Municipal segment. These combined shortfalls are primarily due to acquisition system integration issues, supply chain disruptions influenced by tariffs and an extended delay on a large aquatics project.*** The majority of our businesses are performing in-line with expectations."
>
> **<u>Two-Segment Restructuring</u>**
>
> Evoqua also announced a transition from a three-segment structure to a two-segment operating model designed to better serve the needs of customers worldwide. This new structure is effective October 1, 2018 and combines the Municipal services business with the existing Industrial segment into a new segment renamed Integrated Solutions and Services, a group entirely focused on engaging directly with end users. The Products segment and Municipal products businesses have been combined into a new segment renamed Applied Product Technologies. This segment is focused on developing product platforms to be sold primarily through third party channels.
>
> Mr. Keating continued, "This two-segment restructuring allows divisions with similar business models to be aligned and in some instances combined. By aligning complementary go-to-market strategies, we expect to improve technology deployment and provide more comprehensive customer solutions while lowering our cost structure. Restructuring charges of $17 million to $22 million are expected to be incurred through the implementation of the two-segment structure and related footprint rationalization over the next two fiscal years. The cost savings associated with our actions should begin in Q3 2019, with anticipated benefits in the range of $15 million to $20 million on an annualized basis once fully implemented. We remain committed to the industrial, municipal and aquatics markets and believe that this new structure will position us for improved long-term growth and profitability."

37.    On this news, Evoqua's stock price fell $4.78 per share, or 34.64%, to close at $9.02 on October 30, 2018.

38.    As a result of Defendants' false and/or misleading statements, Evoqua securities traded at inflated prices.  However, after disclosure of Defendants' false and/or misleading statements, Evoqua's

stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class (as defined *supra* at ¶ 1).  Excluded from the Class are Defendants and their family members, directors and officers of Evoqua and their families and affiliates.

40.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Evoqua has millions shares of stock outstanding, owned by hundreds or thousands of persons.

41.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     Whether the Exchange Act was violated by Defendants;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of Evoqua common stock was artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

42.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from Defendants' wrongful conduct.

43.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**NO SAFE HARBOR**

45.     Evoqua's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") were ineffective to shield those statements from liability.

46.     The Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Evoqua who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**
**FRAUD ON THE MARKET**

47.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

      (a)     Defendants made public misrepresentations or failed to disclose material facts;

      (b)     The omissions and misrepresentations were material;

      (c)     The Company's stock traded in an efficient market;

13

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased Evoqua common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

48.     At all relevant times, the market for Evoqua's common stock was efficient for the following reasons, among others:

(a) As a regulated issuer, Evoqua filed periodic public reports with the SEC; and

(b) Evoqua regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services

49.     As a result of the foregoing, the market for Evoqua's securities promptly digested current information regarding Evoqua from all publicly available sources and reflected such information in Evoqua's stock price.  Under these circumstances, all purchasers of Evoqua's securities at relevant times suffered similar injury through their purchases of Evoqua's securities at artificially inflated prices, and a presumption of reliance applies.

**COUNT I**
**Violation of Section 10(b) of The Exchange Act**
**and Rule 10b-5 Promulgated Thereunder Against All Defendants**

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     Defendants carried out a plan, scheme and course of conduct which was intended to and did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Evoqua's securities at artificially inflated

prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

52.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Evoqua securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of Evoqua as specified herein.

54.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Evoqua's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Evoqua and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Evoqua securities.

55.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors,

and/or agents at the Company at all relevant times and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business prospects and operations; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's operations and business projects at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

56. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's flawed manufacturing processes, thereby artificially inflating price of its securities. As demonstrated by Defendants' omissions and misstatements of the Company's business strategy, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Evoqua securities was artificially inflated. In ignorance of the fact that market prices of Evoqua's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by

Defendants, Plaintiff and the other members of the Class acquired Evoqua securities at artificially high prices and were or will be damaged thereby.

58.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's flawed manufacturing processes, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Evoqua securities, or, if they had acquired such securities, they would not have done so at the artificially inflated prices that they paid.

59.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

61.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

62.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Evoqua within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control,

17

and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

64.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth above, Evoqua and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

66.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities.

67.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  November 6, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com
          jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway

Suite 410
Atlanta, Georgia 30338
Telephone:  (770) 392-0090
Facsimile:  (770) 392-0029
Email:  cholzer@holzerlaw.com
mdees@holzerlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

 Plaintiff has reviewed the initial complaint filed in this action.

 Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

 Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

 Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost/Share |
|---|---|---|---|
| AQUA | 09/27/2018 | 60 | $17.73 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds/Share |
|---|---|---|---|
| AQUA | 10/31/2018 | 60 | $9.10 |

 During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

None

Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___2___ day of ___November___, 2018 in _____Lincoln_____, ___New Brunswick, Canada___.

City                                   State

(Signature) X_____Troy Mcwilliams_____

DocuSigned by:

5E4BE23145264E6...

(Print Name)_____Troy Mcwilliams_____

**Evoqua Water Technologies Corp (AQUA)**                           **Mcwilliams, Troy**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 9/27/2018 | Purchase | 60 | $17.7300 |